### MATTOX *v.* THE STATE.

1. There is no constitutional limitation upon the power of the General Assembly to provide the manner in which a jury shall be obtained ; and consequently an act creating a city court is not unconstitutional because it provides for the drawing and summoning of a panel of sixteen jurors for the trial of cases, from which a jury of twelve shall be obtained.

2. The constitution of this State guarantees to litigants in all cases tried in a city

court the right to demand a trial before a jury of twelve persons ; and a provision in an act creating a city court, taking away this right in suits where the principal sum involved is fifty dollars or less, is unconstitutional and void. Such a provision is not, however, such an important part of the scheme of the act creating a city court as that its invalidity will have the effect of rendering void the entire act.

3. The General Assembly has a discretion, uncontrolled by any constitutional limitation, to decide when a given locality has a sufficient number of inhabitants to entitle it to be incorporated as a city.

4. Where a town was reincorporated as a city by an act which repealed all conflicting laws, the territory embraced within the town thereafter became a city, notwithstanding the fact that the act granting a charter to the town had not been expressly repealed. The effect of the act incorporating the city was to repeal by necessary implication the charter of the town.

5. Where the title of an act was to establish " the city court of Valdosta, in and for the county of Lowndes," a provision in the body of the act that the city court of Valdosta be " established in the city of Valdosta, and created with civil and criminal jurisdiction over the whole county of Lowndes," did not, within the meaning of the constitution, contain any matter different from what was expressed in the title.

6. Where a person arraigned under an indictment in the city court of Valdosta waived trial by jury and was tried by the judge without a jury, his judgment convicting the accused is reviewable in the Supreme Court on writ of error, without regard to whether the trial was had at a regular, or an adjourned, or a special term of the court ; the judge of the city court having authority, under the act creating the court, to hold an adjourned term or call a special term for the trial of criminal cases.

7. Where in an indictment for larceny the ownership of the goods alleged to have been stolen is laid in a name which imports a corporation, the presumption is that it is the name of a corporation, and it is not necessary, even as against a special demurrer, to allege the fact of incorporation.

8. Where an indictment charges the theft of a bottle of beer, and the evidence shows that the bottle charged to have been stolen was taken from a barrel containing bottled beer, it is not error to permit counsel for the State to ask the prosecutor, " How many barrels have you missed ? "

9. Under an indictment for simple larceny the accused can be convicted upon evidence showing that the property described in the indictment was stolen from a house.

Submitted March 17, — Decided March 31, 1902.

Indictment for larceny. Before Judge Griffin. City court of Valdosta. February 8, 1902.

*Cranford & Walker* and *J. M. Johnson,* for plaintiff in error.
*S. M. Varnedoe, solicitor, O. M. Smith,* and *C. L. Smith,* contra.

COBB, J. The accused was arraigned in the city court of Valdosta, under an indictment charging him with the offense of simple larceny. A trial by jury having been waived, the case was submitted to the judge, who rendered a judgment convicting the

accused of the offense charged in the indictment. The case is here upon a bill of exceptions assigning error upon the judgment of conviction, as well as upon a judgment overruling a demurrer to the indictment.

1. Counsel for the defendant in error made a motion to dismiss the writ of error, and the grounds upon which this motion was based will be first dealt with. It is contended that the city court of Valdosta is not a like court to the city courts of Atlanta and Savannah, for the reason that the act creating the city court of Valdosta provides for the drawing and summoning of sixteen jurors only, and from this panel a jury of twelve is provided, in civil cases by allowing each party two strikes, and in criminal cases by allowing the accused three strikes and the State one. The act in terms provides for a jury of twelve, and that is the only jury for which provision is made by the act. See Acts 1901, p. 183, sec. 27. The constitution requires that cases in city courts shall be tried by a jury of not less than twelve, when a trial by jury is demanded by either party. Civil Code, § 5876. There is nothing in the constitution which prescribes the manner in which this jury shall be obtained, but this matter is left for determination by the General Assembly. While under existing laws for the trial of civil cases in superior courts a jury is procured by each party striking six jurors from a panel of twenty-four, and in misdemeanor cases by the State striking five and the accused seven from a like panel, there is nothing in the constitution or laws of this State which requires that this plan shall be adopted in city courts. All that is required by the constitution is that a jury of twelve shall be provided; and when the General Assembly makes provision for a jury of twelve impartial persons to try cases pending in a city court, the requirement of the constitution is met, and the manner in which the jury is to be procured is a matter left entirely to the discretion of the General Assembly. The case of *Conyers* v. *Graham*, 81 *Ga.* 615 (4), is directly in point and controlling on this question. There is nothing on this subject in the act creating the city court of Valdosta which prevents that court from being a city court within the meaning of that term as used in the constitution.

2. It is further contended that the act creating the city court of Valdosta is unconstitutional, for the reason that section 14 of the act provides that in cases " where the principal sum involved is

not over fifty dollars a trial by jury shall not be had." The constitution declares: "The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate, but the General Assembly may prescribe any number, not less than five, to constitute a trial or traverse jury in courts other than the superior and city courts." Civil Code, § 5876. Under this provision of the constitution, the General Assembly has no power to deprive a person of the right of trial by jury in any civil case founded upon a cause of action which is purely legal in its nature. The court created by the act under consideration has civil jurisdiction only in cases of the character just indicated, and in all such cases either party has a right to demand a trial by jury. Consequently, so much of the act as attempts to take away this right in cases where the principal sum involved does not exceed fifty dollars is unconstitutional. This being true, the question to be determined is whether the trial of such cases in some other manner than by a jury is such a part of the legislative scheme outlined in the act creating the court as that the inability to carry into effect this part of the act would entirely destroy the scheme and thus render the whole act unconstitutional.

The act provides for the establishment of a court which shall have jurisdiction, concurrent with the superior courts, in all civil cases where exclusive jurisdiction is not vested in those courts, and in criminal cases below the grade of felony; and provides that the judge may grant new trials, and that a writ of error shall lie direct from that court to the Supreme Court. The act provides for jury trial in all cases save the class above mentioned. It provides a method for drawing and empanelling juries. The method of trial in civil cases involving fifty dollars or less seems to be a matter of minor importance in the scheme of the act, and there is nothing at all in the act to show that the General Assembly intended the provision that there should be no jury trial in such cases to be an essential part of the scheme. The rule to be followed in determining whether an act which is unconstitutional in part can be sustained as to the remainder is thus stated by the present Chief Justice in *Elliott* v. *State*, 91 *Ga.* 696: "When a statute can not be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the ob-

jectionable part is stricken, enough remains to accomplish that purpose. But if the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect can not be given to the legislative intent, the rest of the statute must fall with it." See also, in this connection, *Irvin* v. *Gregory*, 86 *Ga*. 615; *Hancock* v. *State*, 114 *Ga*. 439. Applying this rule to the facts of the present case, it can not be said that the manner in which the trivial cases referred to above are to be tried was in any sense so connected with the general scope of the act that the court thereby created would not have been brought into existence by the legislature without the provision which denies a jury trial in those cases involving trifling amounts. The legislative will and purpose manifested by the act taken as a whole is to provide a local court for the relief of the superior court in misdemeanor cases, and in civil cases where under the constitution the superior court has not exclusive jurisdiction. The deprivation of trial by jury in cases involving fifty dollars or less could not have been considered by the General Assembly as such an essential part of the measure creating the city court of Valdosta that it would not have passed the act if it had known that it had no constitutional power to make a provision having that effect a part of the act. The main purpose of the act was the creation of a court of the character above referred to. The manner of trial to be followed in that court in cases of trifling importance, embracing unquestionably a very small part of the cases falling within the jurisdiction of the court, was merely a matter of minor detail. To hold the section unconstitutional which takes away the right of trial by jury in suits for fifty dollars or less would not in any material or substantial way disturb the general scheme of the act; for the effect of such a ruling would be simply to eliminate from the act the paragraph in question and make applicable to the cases referred to in the paragraph the other provisions of the act in reference to trial by jury. No further legislation would be required, and the practice and procedure of the court would not be in any material respect altered. Viewing the act as a whole, we do not think that portion which, if valid, would have resulted in a deprivation of the right of jury trial in such a small and comparatively insignificant class of cases, when it is provided for all other classes of cases, and when the method and machinery for obtaining juries is provided, is such an essential part of the

scheme of the act creating the court as that its withdrawal from the act would have the effect to render the entire act void. The effect of this ruling is to give to litigants in all cases in the city court of Valdosta the right to demand a trial by jury; or, in other words, to give to litigants in that court, in suits involving fifty dollars or less, the same rights with respect to jury trial as are provided by the act for litigants in other cases.

3. It is also contended that the city court of Valdosta was not established in a city, for the reason that Valdosta is not a city within the meaning of that term as used in the constitution, it having a population of only 5,600 inhabitants when it was created a city by legislative enactment. What territory and what population shall be sufficient to constitute a city are questions referred, under the constitution, to the determination of the General Assembly, and the courts have no power to review the judgments of the General Assembly on such questions. See *Heard* v. *State*, 113 *Ga.* 444. If the General Assembly had by legislative enactment declared Valdosta to be a city, it had the power after the passage of such an act to establish a city court in Valdosta.

4. By an act approved November 21, 1901, the City of Valdosta was incorporated and Valdosta was declared to be a city under the corporate name of the City of Valdosta. By this act the powers, rights, and liabilities of the City of Valdosta are fully set forth, and in the act is a clause repealing all conflicting laws. Acts 1901, p. 670. On November 27, 1901, the act incorporating the town of Valdosta and the several acts amendatory thereof were repealed. Acts 1901, p. 689. It is said that, because the act creating the City of Valdosta was passed before the act repealing the charter of the town of Valdosta was passed, the act incorporating the city never took effect. We do not think this is the correct view of the matter. When the act of November 21 was passed, the effect of that act was to create the City of Valdosta and to repeal all laws conflicting with that act, and all acts relating to the town of Valdosta were thus repealed by necessary implication. The act of November 27, repealing all laws in relation to the town of Valdosta, was not absolutely indispensable to the creation of the City of Valdosta, and therefore it is immaterial that the repealing act was passed after the approval of the act incorporating the city.

5. It is further argued that the act establishing the city court

of Valdosta is unconstitutional, for the reason that the body of the act contains matter different from what is expressed in its title; the title being to establish "the city court of Valdosta in and for the county of Lowndes," and the body of the act establishing the city court "in the City of Valdosta." The act provides that the court shall be established in the City of Valdosta, with civil and criminal jurisdiction over the whole county of Lowndes. We see nothing in the body of the act that differs from the title, so far as the location of the court is concerned. While the title does not in terms state that the court is to be located in Valdosta, the court is described in the title as the city court of Valdosta, and is to be established in and for the county of Lowndes. There is nothing variant from this title in that part of the body of the act which provides that the city court of Valdosta shall be established in the city of Valdosta, with civil and criminal jurisdiction over the whole county of Lowndes.

6. An additional reason urged for dismissing the writ of error is that a writ of error does not lie to this court from the city court of Valdosta "in cases not tried in term time"; it being contended that this case was "tried in vacation" and without a jury. It does not appear from the bill of exceptions or the record that the accused was tried "in vacation." On the other hand, the bill of exceptions recites that the case came on to be tried in the city court of Valdosta, which would indicate that the court was then in session. It also appears that the accused waived trial by jury. It does not appear from the record or the bill of exceptions whether the term at which the case was tried was a regular or adjourned or a special term of the court. The accused having waived trial by jury, a lawful trial by the court could be had at any term of the court which was lawfully convened, notwithstanding that under the act creating the court a trial by jury could be had only at a regular term. The judge of the city court of Valdosta has, under the act creating that court, the same powers that a judge of the superior court has in reference to convening the court, and under the law of this State the judge of a superior court may call a special term at any time for the trial of criminal cases; and if the city court of Valdosta was in session in pursuance of an order calling a special term for the trial of this case alone or with other cases, the trial was regular at that time, the accused having waived a trial by jury.

The judgment rendered in the case was a judgment of the city court of Valdosta, and all judgments of that court are reviewable in this court on writ of error.

7. The accused was indicted for the offense of simple larceny; it being charged that he "did take and carry away, with intent to steal the same, one bottle of beer, the personal goods of the Acme Brewing Company," of the value of fifteen cents. A demurrer was filed which set up that the indictment was defective, for the reason that it did not set forth the ownership of the property alleged to have been stolen; that the term Acme Brewing Company was not the name of an individual, and that it did not import either a partnership or a corporation. The demurrer was overruled, and this is one of the errors assigned. It is essential to the validity of an indictment for larceny that the goods alleged to have been stolen should be averred to be the property of some person or number of persons. If it is the property of an individual, the name of the individual should be stated. If it is the property of a partnership, the names of the persons composing the partnership should be set forth. If it is the property of a corporation, the name of the corporation should appear in the indictment. If in the indictment the name of the owner appears to be a partnership, the indictment would be defective unless the names of the individuals composing the partnership were set forth therein. See 12 Enc. P. & P. 967. If an indictment alleges the owner to be a corporation, it is not necessary to set forth the names of the members of the corporation. 3 Enc. P. & P. 759; Rapalje, Lar. § 103; 2 Russ. Cr. (6th ed.) 271. In the present case the indictment alleges that the owner of the property alleged to have been stolen was the Acme Brewing Company. This is not the name of an individual. The indictment does not show by allegation whether it is a corporation or partnership. The name is of a character which is more appropriate to a corporation than a partnership, though partnerships are sometimes formed under names which would be appropriate to corporations. The name being one more peculiarly suited to a corporation than a partnership, the presumption would be that it was the name of a corporation. The name itself imports a business corporation. When the name of a party to a suit is such as to import that the party is a corporation, there is a presumption to this effect, and this presumption prevails until the contrary is made to appear. See *Wilson* v. *Sprague Mow-*

*ing Machine Co.,* 55 *Ga.* 672; *Saint Cecilia's Academy* v. *Hardin,* 78 *Ga.* 39; *Cribb* v. *Waycross Lumber Co.,* 82 *Ga.* 597. In the opinion in the *Hardin* case, supra, Clark, Judge, said: "Whether the name imports a corporation should, as a general rule, be left to judicial knowledge. If the name is manifestly religious, charitable, or educational, or other similar beneficence for the public good, the usual subjects of incorporations, it should import a corporation. If it is a financial, commercial, manufacturing name, or other kindred purpose, the usual subjects of incorporation, such a name should import a corporation. There is a difference between such names and those indicating partnerships, joint contractors, or other natural persons not the usual subjects of incorporations."

In each of the other two cases cited above the name ended with the word "company," and it was held that the name imported a corporation. The Acme Brewing Company can not be an individual. It must be therefore either a corporation or a partnership. If it is a partnership, the indictment would be defective for the reason that the names of the partners were not set forth. If it is a corporation, the indictment would be good notwithstanding the names of the members were not stated in the indictment. The term does not import a partnership, for it would be an unusual name for a partnership. It does import a corporation, for the reason that it is a name that ordinarily would be adopted by a corporation engaged in the character of business that the name indicates. As the name imports a corporation, the question is, is it necessary to allege in the indictment that it is a corporation, to make the indictment valid? Whether it is so necessary is a question about which the authorities are not agreed. See 12 Enc. P. & P. 973; Hughes, Cr. Law & Pr. § 2737; Whart. Cr. Pl. & Pr. (9th ed.) § 110, note 5; 10 Enc. P. & P. 509–10; Rapalje, Lar. § 103. The following cases maintain the negative of the proposition just above stated: Fisher *v.* State, 40 N. J. L. 169; State *v.* Grant, 104 N. C. 908; State *v.* Fitzpatrick, 9 Houst. 388; Stanley *v.* Railroad Co., 89 N. C. 331; McLaughlin *v.* Com., 4 Rawle, *464; State *v.* Shields, 89 Mo. 259. In the following cases it was held that the fact of incorporation must be alleged: Wallace *v.* People, 63 Ill. 451; Cohen *v.* People, 5 Parker's Crim. Rep. 330; Pells *v.* State, 20 Fla. 774. In many of the cases cited above, other cases will be found cited which bear on the question under discussion. In this State it has

been held that the fact that the indictment did not allege the owner to be a corporation, when the name was of such a character as to indicate that it was, was not such a defect as would be good in arrest of judgment. *Hatfield* v. *State,* 76 *Ga.* 499 ; *Berry* v. *State,* 92 *Ga.* 47. It has been held: "Where an indictment charged a defendant with 'breaking and entering the depot of the Savannah, Florida & Western Railway, a corporation chartered by said State, doing business under said name,' the allegation that the owner was a corporation chartered by said State was mere surplusage and need not be proved." *Crawford* v. *State,* 68 *Ga.* 822. The present case brings up for decision the question as to whether this omission would be such a defect as could be taken advantage of by special demurrer before arraignment. If the name imports a corporation, we see no good reason why the rule which has been applied in civil cases should not be made applicable in criminal cases; so that when a name is set forth in an indictment which imports a corporation rather than an individual or a partnership, there would be a presumption that it was the name of a corporation, and this presumption would prevail until the contrary was made to appear. Upon the face of the indictment the property alleged to have been stolen would be the property of a corporation, and the indictment would therefore not be defective for failing to allege that the owner was in fact a corporation, when the name imported that such was the case. It seems, however, from the authorities that it would be necessary to prove the fact of incorporation, although it is not alleged in the indictment, though some courts hold this fact may be proved by evidence showing that the corporation was a de-facto one, and that it is not necessary that the charter or articles of incorporation should be produced. See Smith *v.* State, 28 Ind. 321; Braithwaite *v.* State, 28 Neb. 832. No such questions as those just referred to are made in the present case, and hence it is not necessary to make any decision thereon. It would seem, however, that if the name imported a corporation and raised a presumption of corporate existence for purposes of pleading, it would also raise such a presumption for purposes of evidence, and that it would be incumbent upon the accused to prove affirmatively that no such corporation existed.

8. During the progress of the trial the prosecuting officer asked a witness this question: "How many barrels of beer have you missed ?" Counsel for the accused objected to this question, upon

the ground that the accused was not charged with stealing *barrels* of beer, but simply one *bottle* of beer.  The objection was overruled, and this is assigned as error.  The evidence shows that the beer alleged to have been stolen was bottled beer contained in barrels, and that the bottle which it was claimed the accused stole was taken from a barrel of beer.  Under such circumstances the evidence was admissible, and the court did not err in so holding.

9. The accused was tried by the judge without the intervention of a jury, and a judgment of conviction was entered against him. It is contended that this judgment is erroneous, because the evidence shows that if the accused was guilty of any offense at all it was the offense of larceny from the house, and the court had no power to convict him of the offense of simple larceny upon evidence showing him guilty of larceny from the house.  In *Gardner* v. *State*, 105 *Ga.* 662, it was ruled: "Evidence showing that the accused took and carried away from a house, with intent to steal the same, the personal goods of another, will warrant a general verdict of guilty upon an indictment which merely charges simple larceny." That case is directly in point and is controlling.  See also *Roberts* v. *State*, 83 *Ga.* 369.  The evidence authorized the verdict, and there was no error which requires a reversal of the judgment.

*Judgment affirmed.   All the Justices concurring, except Little and Lewis, JJ., absent.*