**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 13, 2023**

# In the Court of Appeals of Georgia

A23A0704. BROWN v. THE STATE.

BROWN, Judge.

Following a jury trial, Rickie Lee Brown was convicted of identity fraud, OCGA § 16-9-121 (a) (1).[1] On appeal, Brown contends that the evidence was insufficient to support his conviction. We disagree and affirm.

Viewed in the light most favorable to the jury's verdict, *Martinez v. State*, 325 Ga. App. 267 (750 SE2d 504) (2013), the evidence shows that on June 20, 2018, Brown attempted to cash a check ("[c]heck number 15250") at the United Community Bank in the amount of $1,922.47, made payable to "Rickie L. Brown" and purportedly issued from the account of "Coleman Lumber Co., Inc." When Brown

---

[1] Under the rule of lenity, the trial court sentenced Brown to the lesser offense of forgery in the third degree. See OCGA § 16-9-1 (d) (1). See also *McNair v. State*, 326 Ga. App. 516 (757 SE2d 141) (2014).

handed the check and his driver's license to the head teller, she called the account holder, Coleman Lumber, to verify the check "because of the dollar amount." The teller spoke with "Mr. Coleman himself" who verified that the check had not been written to Brown for that amount. The teller went to the back of the bank and called police. Brown, who had become nervous by the teller's disappearance, left and was apprehended by police as he walked out of the bank. Brown abandoned the check and his driver's license at the bank. The teller identified Brown at trial as the man who presented the check, and a bank surveillance video of the incident, depicting Brown at the teller station attempting to cash the check, was played for the jury.

The owner of Coleman Lumber testified at trial that he did not know Brown; that Brown did not have permission to go in the United Community Bank and attempt to cash a check drawn on his company's account; and that any use of the Coleman Lumber business name and its checking account number was committed without permission of the company. According to the owner, several checks written to suppliers to pay bills owed by Coleman Lumber never arrived at those vendors and the owner did not give anyone permission to take possession of those checks other than the individuals to whom they were written. According to a law-enforcement investigator, two additional checks issued by Coleman Lumber were found in the

glovebox of the vehicle in which Brown and his co-defendants arrived in and attempted to flee the bank in.

In his sole enumeration, Brown contends that the State presented no evidence at trial identifying Coleman Lumber as a corporation or one of the business entities defined in OCGA § 16-1-3 (12) as a "person." Thus, Brown contends that the evidence was necessarily insufficient to show that he violated OCGA § 16-9-121 (a) (1).

OCGA § 16-9-121 (a) (1) provides: "A person commits the offense of identity fraud when he or she willfully and fraudulently: (1) Without authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person[.]" Under OCGA § 16-1-3, which contains the definitions of certain words used in Title 16, the term "person" means "an individual, a public or private corporation, an incorporated association, government, government agency, partnership, or unincorporated association." OCGA § 16-1-3 (12).

At trial, the following colloquy transpired between the prosecutor and Larry Coleman, the owner of Coleman Lumber:

Q: Back on June 20th, 2018, did you have any interest in Coleman Lumber Company, Inc.?

3

A: Yes.

Q: And were you a co-owner of that business?

A: Yes.

Q: And did the business have a bank account?

A: Yes, sir.

Q: And where did they bank at?

A: United Community.

The prosecutor later asked Mr. Coleman if Brown does "any business with your *company*?" (Emphasis supplied.) Mr. Coleman responded, "No." The prosecutor then questioned Mr. Coleman about additional checks found in Brown's possession and asked him the following question: "So, if Rickie Brown, Jarris Flanagan or David Miller utilized information off of those checks, being your account number at the bank, and your *business* name, would that have been without your permission?" (Emphasis supplied.) Mr. Coleman responded: "It would have been without, yes, sir."

Brown acknowledges that the State questioned Mr. Coleman about his status as the owner of Coleman Lumber, but argues that the State asked him nothing about

4

its type of business, i.e., whether it was a corporation, partnership, etc. Brown contends that this is "akin to the State providing the [j]ury with an Atlanta address and expecting the jurors to make the leap that the scene of the crime was in Fulton County." We are not persuaded.

As far as this Court can tell, we have never directly addressed this issue. However, in *Williams General Corp. v. Stone*, 280 Ga. 631 (632 SE2d 376) (2006), our Supreme Court held that a corporation is a "person" for purposes of the civil Racketeer Influenced and Corrupt Organizations Act. Id. at 631-633 (1), citing OCGA § 16-1-3 (12). See also *Lee v. State*, 283 Ga. App. 826, 826-827 (1) (642 SE2d 876) (2007) (holding that evidence supported the defendant's identity fraud conviction where he ordered fraudulent payroll checks on his former company's account and noting that the former company was a "person" under the identity fraud statute as defined by OCGA § 16-1-3 (12)). While neither of these decisions were based upon a similar argument to the one made by Brown in this case, this does not end our analysis. In a line of analogous cases involving burglary, larceny, and embezzlement, this Court stated:

> Where, in an indictment for embezzlement, the name of the organization of which the accused was financial secretary imports a corporation, the

5

presumption is that it is a corporation, and, in the absence of affirmative proof by the accused that no such corporation existed, and where there is no allegation in the indictment that it was a corporation, it is not necessary for the State to prove the fact of incorporation. And where a final judgment has been rendered, the judgment is not void, nor voidable, for the mere want of such proof.

*Vaughn v. State*, 17 Ga. App. 268 (86 SE 461) (1915). See also *Mattox v. State*,115 Ga. 212, 221 (41 SE 709) (1902) (stating in dicta that in a prosecution for larceny that "if the name imported a corporation and raised a presumption of corporate existence for purposes of pleading, it would also raise such a presumption for purposes of evidence, and that it would be incumbent upon the accused to prove affirmatively that no such corporation existed"); *Hill v. State*, 117 Ga. App. 721 (161 SE2d 917) (1968) ("In the indictment for burglary in this case the ownership of the place burglarized was laid in a name (McCrory Corporation) which imported a corporation. The presumption was that it was a corporation, and in the absence of affirmative proof by accused that no such corporation existed it was not necessary for the State to prove the fact of incorporation."). Having reviewed the evidence, including the actual check that Brown attempted to cash — which also indicated that Coleman Lumber was a corporation — and analogous caselaw, we conclude here that the State presented

6

sufficient evidence that Coleman Lumber was a "person" within the meaning of OCGA § 16-9-121 (a) (1).

*Judgment affirmed. McFadden, P. J., and Markle, J., concur.*